UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DONALD V. RYAN, et al.,<br><br>Defendants. | Case No. 12-cv-05000-JST<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND VACATING HEARING**<br><br>Re: ECF No. 57 |

In this action for claims arising out of an insurance coverage dispute, Plaintiff Nationwide moves for summary judgment on Defendants' counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing, as well as Defendants' prayer for punitive damages. As the motion is suitable for determination without oral argument, the hearing scheduled for April 10, 2014, is VACATED. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

### A. The Parties and Claims

Nationwide Mutual Insurance ("Nationwide") issued an insurance policy of commercial property insurance to Defendants Donald V. Ryan, Barbara Ryan, and Michael Ryan, which was effective from April 24, 2011, to April 24, 2012, and that provided first-party property coverage for a commercial building located at 7031 Watt Avenue in North Highlands, California ("the property"). Am. Compl., ECF Nos. 5, 33. In June 2011, Defendants submitted a claim to Nationwide with respect to damage caused to the property by vandalism. ECF No. 5 ¶ 9. Nationwide paid part of the claim ($99,277.52) before voiding the policy and denying the remainder of the claim ($541,264.89) on March 27, 2012, on the ground that Defendants committed insurance fraud. Id. ¶ 18.

Nationwide brings this action against Defendants to obtain a declaratory judgment that Nationwide's voidance of the policy and denial of benefits was proper.

Defendants filed counterclaims against Nationwide for breach of contract and breach of the implied covenant of fair dealing based on Nationwide's failure to pay the totality of their claimed damages. ECF No. 19. Defendants seek, among other things, punitive damages in connection with their claim for breach of the implied covenant.

### B.   Facts

#### 1.   Defendants' Claim and Nationwide's Investigation

Defendants owned a large commercial building in North Highlands, California. Liberatore Decl. ¶ 18 & Ex. 40, Donald Ryan Dep. at 17:4-7. Prior to the vandalism damage, a Nationwide agent inspected the property for underwriting purposes and increased the policy's premiums based on the results of this inspection. Trapani Dep. at 8.

In June 2011, Defendants submitted a claim to Nationwide with respect to a vandalism loss to that building. Johnson Decl. ¶ 2. Nationwide's claims representative, Norm Johnson, contacted Defendants and learned that they were represented by public adjuster Michael Connaughton of Paladin Consulting, who in turn retained George John of Wolf & Associates to help him prepare an estimate for Defendants. Johnson Decl. ¶ 4; Connaughton Decl. ¶¶ 8-9. Johnson contacted Connaughton and made arrangements to visit the property on June 24, 2011, at which time Johnson inspected the site, took photographs, and began an investigation of the loss and necessary repairs. Johnson Decl. ¶¶ 5-6. Johnson wrote an "activity log entry" describing is inspection, which does not state that he took pictures. See id., Ex. 2.

At Johnson's request, representatives of a contracting firm named Regional Builders, Inc. ("RBI") inspected the property sometime between June 24, 2011, and July 1, 2011, and took photographs. Boling Decl. ¶ 5. Johnson met with RBI representatives at the property on July 7, 2011, where they prepared an estimate of necessary repairs. Johnson Decl. ¶ 7. Johnson prepared another activity log entry to document this inspection. Id., Ex 3.

By letter dated July 14, 2011, Johnson wrote to Connaughton to request that Defendants submit a sworn statement of Proof of Loss. Johnson Decl. ¶ 8 & Ex. 4, 5. Johnson provided a blank form for Defendants to use; among other things, the form requested information regarding

2

the replacement cost value ("RCV") of the property damaged as a result of the vandalism, the applicable depreciation of that property, and the actual cash value ("ACV") of that property, which is determined by subtracting the depreciation amount from the RCV. Id.

On or about July 21, 2011, Johnson completed Nationwide's estimated scope and cost of repairs of the vandalism damage. By that estimate, Nationwide estimated that the replacement cost value of necessary repairs was $127,881.73, with recoverable depreciation in the amount of $27,604.21. Johnson Decl. ¶ 9 & Ex. 6; Boling Decl. ¶ 7. This estimate bears the heading "AMCO insurance Company" instead of "Nationwide" because of Johnson's "oversight." Johnson Decl. ¶ 9.

On or about August 4, 2011, Nationwide sent to Connaughton a check in the amount of $99,277.52, representing the ACV, less the applicable deductible under the policy, which was $1,000. Johnson Decl. ¶ 11 & Ex. 9. Also on August 4, Johnson sent to Connaughton a copy of Nationwide's 48-page estimated scope and costs of repair. The cover letter that accompanied the estimate invited Defendants to hire a contractor to perform the repair work and requested that Defendants contact Nationwide if they discovered hidden or additional damage. Johnson Decl. ¶ 12 & Ex. 10. Connaughton forwarded Nationwide's check to Defendants, stating that the $99,277.52 . . . is the initial insurance company payment on the above-referenced property [and] that cashing this check will not prejudice our ability to continue processing our claim in order to be compensated for the full insurance related damages." Liberatore ¶ 17 & Ex. 11.

On September 6, 2011, Connaughton wrote to Johnson to advise that Defendants disagreed with the "settlement amounts" Nationwide had paid on the claim and demanded that Nationwide submit the claim to appraisal, as provided in the policy. Johnson Decl. ¶ 13 & Ex. 12.

The next day, Connaughton wrote to Johnson again to renew his request for an appraisal and to provide him with Defendants' Proof of Loss, which was signed by Donald Ryan under penalty of perjury and claimed that the vandalism had resulted in damages that would cost $559,641.19 to repair ("the first estimate"). Johnson Decl. ¶¶ 14-15 & Ex. 13, 14. Connaughton considered this estimate to be a "preliminary statement designed to advise the insurer of its potential liability on a claim." Connaughton Decl. ¶ 24. Connaughton testified that he used the Wolf & Associates estimate in putting together the first estimate but he did not submit the Wolf &

3

Associates estimate as an attachment because it was not completed at the time.  Id. ¶ 61.  The form of the Proof of Loss was different from the form Johnson had supplied, was printed on "Paladin Consulting" letterhead, and did not provide the information that Nationwide had requested in its form regarding the applicable depreciation or ACV of the property damaged by vandalism.  Id; Johnson Decl. ¶ 15 & Ex. 14.  Defendants did not submit any photographs to support the figures in the estimate.  Johnson Decl. ¶¶ 14-15 & Ex. 13, 14.

On September 11, 2011, Johnson wrote to Defendants, stating that they could obtain additional estimates and asking them to contact Nationwide if their contractor's estimate was higher than Nationwide's.  Johnson Decl. ¶ 17 & Ex. 16.  Also on September 11, 2011, Johnson wrote a second letter to Defendants to explain how to receive the depreciation that had been withheld from Nationwide's payment of the undisputed amount, and the conditions placed on his receipt thereof.  Johnson ¶ 18 & Ex. 17.

On September 13, 2011, Johnson wrote to Connaughton and acknowledged receipt of the demand for appraisal; Johnson also advised Connaughton of Nationwide's designated party-appraiser.  Johnson Decl. ¶ 19 & Ex. 18.  He wrote again on October 18, 2011, to explain that receipts for repair work should be submitted to Nationwide for recovery of the withheld depreciation.  Johnson Decl. ¶ 20 Ex. 19.

On November 17, 2011, Johnson wrote to Connaughton again and explained:

> To date we have not received any information indicating that anymore should be paid on this claim. The amount claimed in Mr. Connaughton's correspondence dated September 7, 2011 provides no substantive information that would allow [Nationwide] to determine that those figures were based on like, kind and quality repairs for damages suffered in the above referenced incident.  In order to determine that your estimate matches our estimate in scope of repairs we will need an estimate from you with the scope detailed line by line such as that which we provided. Until such information is provided, [Nationwide] has only the estimate it developed by which to determine the cost of repairs, and thus no additional policy benefits can be forthcoming.

Johnson Decl. ¶21 & Ex. 20.

Having received no response to that letter, on December 19, 2011, Johnson wrote again and stated exactly what he had written in his November 17 letter.  Johnson Decl. ¶ 22 & Ex. 21.

4

Johnson wrote similar letters twice more, on January 31, 2012, and on February 27, 2012. Johnson Decl. ¶¶ 24-25 & Ex. 22, 23.

### 2.     Preparation for Appraisal Hearing

The parties agreed to the appointment of the Honorable Harry W. Low to act as neutral umpire in the appraisal. Liberatore Decl. ¶ 2. During a telephone conference on February 27, 2012, Justice Low ordered the parties to exchange the documents that they anticipated introducing into evidence at the appraisal hearing no later than March 13, 2012. Id. ¶ 3. On that date, Connaughton provided to Nationwide an estimated scope and cost of repairs, dated March 12, 2012, in the amount of $541,264.89, with recoverable depreciation of $26,805.20, and an ACV of $514,549.69 ("the second estimate"). Id. ¶ 4 & Ex. 24, 25. The estimate bore no letterhead or license number to identify its author or any supporting documentation for the estimates. Id. This estimate claimed damages that were approximately $18,000 lower than the first estimate; Connaughton attributed this difference to his mistaken belief during his initial inspection that the air conditioning units in the property were larger than they actually were. Connaughton Decl. ¶ 64.

### 3.     Voidance of Policy and Denial of Claim

Upon receipt of the second estimate, Nationwide representatives met with RBI representatives to compare the second estimate to Nationwide's estimate to determine the reasons for the wide disparity between the two amounts. Johnson Decl. ¶¶ 27-40; Boling Decl. ¶¶ 10-24. Johnson identified several items in the second estimate that claimed vandalism damage that Johnson had not noticed during his investigation. Johnson Decl. ¶¶ 29-40. Johnson determined that the items in the second estimate: (1) were not damaged by the claimed vandalism; (2) were listed in greater amounts or sizes than that which was needed to repair the damage allegedly caused by the vandalism; (3) were of a superior quality than that which existed at the time of the vandalism; or (4) were listed multiple times. Johnson Decl. ¶ 40. Johnson then sent Defendants a letter denying the balance of their claim on the ground that the March 12, 2012, estimate contained substantial material misrepresentations designed to procure the payment of insurance policy benefits that were not due. Johnson Decl. ¶ 41 & Ex. 38.

//

### 4. Cancellation of Appraisal Hearing

By letter dated March 26, 2012, Nationwide advised Justice Low and Defendants' representatives that, based on its review of the March 12, 2012, estimate, Nationwide had opted to deny the balance of Defendants' claim and that, therefore, there was no reason to proceed with the appraisal. Liberatore Decl. ¶ 5, Ex. 37.

On March 27, 2012, Nationwide issued its formal denial letter to Defendants' counsel and public adjuster. Johnson Decl. ¶ 41 & Ex. 38.

Defendants' representatives objected to Nationwide's "unilateral" decision to cancel the appraisal and appeared at Justice Low's office on the morning of March 28, 2012, prepared to proceed with the appraisal hearing. Justice Low telephoned Nationwide's counsel to discuss the matter, and at the end of the discussion, advised that the appraisal hearing would not proceed. Liberatore Decl. ¶ 7.

### 5. Defendants' Petition to Compel Appraisal in State Court

Defendants filed a petition to compel appraisal with the Sacramento County Superior Court, which that court granted. Liberatore Decl. ¶ 8; Request for Judicial Notice, Ex. D, E, K, L, M.[1] Nationwide filed this action to resolve coverage issues on June 20, 2012. Nevertheless, the appraisal was held on June 26, 2012. Liberatore Decl. ¶ 11. On July 9, 2012, the panel issued its award, subscribed to by Justice Low and Defendants' party-appraiser, determining the replacement cost value of the loss to be $524,253.86 and the actual cash value to be $481,583.06. The award included all items that Defendants claimed needed to be repaired or replaced to address the vandalism damages, even those items Nationwide had determined were false. Id. ¶13 & Ex. 26.

### 6. Withheld Information

Connaughton retained George John, an estimator working for Wolf & Associates Construction, Inc., shortly after the vandalism was discovered to help him estimate the scope of the damage to the property and the costs to repair the damage. Connaughton Decl. ¶ 10;

---

[1] The Court takes judicial notice of court documents pertaining to the appraisal-related proceedings in state court because such documents are relevant to the claims at issue and no party questions their authenticity. See Fed. R. Evid. 201.

Liberatore Decl. ¶14 & Ex. 39. John completed his estimate on July 9, 2011, nearly two weeks before Johnson completed Nationwide's estimate. Id. That estimate indicated that the RCV for repairs of the building was $559,641.19. Id.

The existence of the Wolf & Associates estimate was not made known to Nationwide during its investigation of the claim and Nationwide learned of it for the first time on September 9, 2013 — more than two years after Connaughton submitted Defendants' Proof of Loss — when Defendants disclosed documents during the course of discovery in this action. Id.; Liberatore Decl. ¶ 15; Johnson Decl. ¶ 42.

### 7. Terms of the Policy

The policy provides, in part:

> **E. LOSS CONDITIONS**
>
> The following conditions apply in addition to the Common Policy Conditions and Commercial Property Conditions . . .
>
> **3. Duties In The Event Of Loss Or Damage**
>
> a. You must see that the following are done in event of loss or damage to Covered Property . . .
>
> (2) Give [Nationwide] prompt notice of the loss or damage. Include a description of the property involved.
>
> . . .
>
> (5) At [Nationwide's] request, give [Nationwide] complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
>
> . . .
>
> (7) Send [Nationwide] a signed, sworn proof of loss containing the information [Nationwide] request[s] to investigate the claim. You must do this within 60 days after [Nationwide's] request. [Nationwide] will supply you with the necessary forms.
>
> . . .

7

           (8) Cooperate with us in the investigation or settlement of the claim

Liberatore Decl. ¶ 16 & Ex. 1 at NMIC 0008, 0016-0017 (emphasis in original).

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

### A.  CONCEALMENT, MISREPRESENTATIONS OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you, or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

      1. This Coverage Part;

      2. The Covered Property;

      3. Your interest in the Covered Property; or

      4. A claim under this Coverage Part

Id. at NMIC0050 (emphasis in original).

## II.  LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**III.    DISCUSSION**

  **A.    Breach of Contract**

Defendants contend that Nationwide's failure to pay them the total amount they claimed in the second estimate constitutes a breach of the policy. ECF No. 19 ¶ 13.

Nationwide moves for summary judgment on this counterclaim on the ground that its denial of the balance of Defendants' claim was proper under the explicit terms of the policy. Specifically, Nationwide contends that the denial was proper because Defendants intentionally misrepresented material information, submitted false information, and withheld material information in connection with their claim, which Nationwide claims provided it with valid

grounds for voiding the policy.

Defendants oppose the motion, arguing that they never misrepresented or concealed any material facts with respect to the claim and that Nationwide lacks evidence to establish any fraud or misrepresentations.

As will be discussed below, a genuine issue of material exists with respect to whether Defendants intentionally concealed or misrepresented facts material to their claim, and thus, a genuine issue of material fact exists with respect to whether Nationwide's denial of the remainder of Defendants' claim constitutes a breach of the policy. Accordingly, Nationwide's motion is DENIED as to this claim.

### 1. Elements of Breach of Contract

In California, a claim for breach of contract requires a plaintiff to establish: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damage to plaintiff. See Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2009).

### 2. Intentional Misrepresentations

Nationwide contends that Defendants intentionally misrepresented facts by claiming in the second estimate damage to items that allegedly were not damaged by vandalism. Nationwide bases this contention on the testimony of Johnson, its own adjustor. Johnson claims that Defendants claimed over $400,000 in connection with damage that was not present at the property when he inspected it. See Johnson Decl. ¶¶ 29-40. For example, Johnson noted after his inspection that none of the flooring in the property appeared damaged by vandalism, yet Defendants' estimate requested the replacement of all of the building's flooring. Johnson Decl. ¶¶ 29, 31. Johnson also compared the pictures that Defendants submitted during the appraisal to the ones that he took during his investigation and noticed that graffiti depicted in the Defendants' photo was not present when he visited the property nine months before. See Johnson Decl. ¶¶ 32-33 & Ex. 27-29. Nationwide also contends that the second estimate contains duplicative items. For example, Johnson noted that the estimate accounted for the costs of "demolition" twice, once in the specific line item calling for the removal of a particular component, and again under the "General Conditions." Johnson Decl. ¶ 39.

1  Defendants, on the other hand, argue that a genuine issue of material fact exists with respect to whether certain items were damaged by the vandalism, and that any discrepancies between their estimate and Nationwide's estimate are the result of their "clean up" of the property prior to Johnson's first visit to the property, which took place eleven days after the vandalism. John of Wolf & Associates, who inspected the property several days prior to Johnson, testified that he saw significant damage to the floor of the property and graffiti on the walls, whereas Nationwide asserts that no such damage was caused by the vandalism. John Decl. ¶¶ 12, 20-21, 23.[2] Defendants also contend that their estimate contains no duplicate items. In particular, Defendants contend that "demolition" work is not billed more than once, because some of the entries at issue concern the clean up of debris as opposed to demolition. Id. ¶ 3.

The Court concludes that a genuine issue of material fact exists with respect to whether the items that were claimed in the second estimate were damaged by the vandalism or are duplicative. These issues turn on the credibility of the individuals who inspected the property, as well as their reports and estimates, which makes the issues inappropriate for resolution via summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Moreover, even if Nationwide were to succeed in demonstrating that the Ryans concealed a fact from Nationwide in the process of making their claim, Nationwide would still have to show that the fact was material. The Court cannot make that determination on summary judgment.

### 3. Submission of False Information

Nationwide contends that Defendants overstated the work necessary to repair the property, as well as the quality of the items that were damaged by the vandalism. This contention also is based on Johnson's observation and investigation of the property after the vandalism. For

---

[2] Nationwide objects to the testimony of Ryan on the ground that Ryan's testimony is "untrustworthy," as Ryan states in his declaration that he is a "former contractor" but he testified at his deposition that he never had a contractor's license. ECF No. 73 at 14. The Court concludes that this objection is not well-taken, because Nationwide has not shown that the lack of contractor's license is sufficient to make Ryan's opinions unreliable.

example, Johnson concluded that the only vandalism to the massage room was a single hole in the wall (and some damage to the door), which required the repair of only 8 square feet of drywall. On the other hand, Defendants' second estimate called for the removal and replacement of 60 square feet of drywall. See Johnson Decl. ¶ 30.  In terms of the quality of the damaged items, Johnson testified that the second estimate called for the replacement of a "custom commercial storefront window," costing nearly $800, even though his inspection showed that the window had been boarded up with a piece of plywood that looked like it had been in place before the vandalism occurred.  Johnson Decl. ¶ 38.

Defendants argue that a genuine issue of material fact exists with respect to whether they overstated the necessary repairs or the quality of the damaged items, as any differences between their estimate and Nationwide's estimate is the result of Nationwide's failure to recognize the time, labor, and money required to complete the repairs under industry standards, as well as the fact that some of the damaged items are no longer in production.  John Decl. ¶¶ 24, 28-30. Defendants also contend that there is no evidence showing that their first estimate was false and note that that estimate was based on the best proof available to them at the time.  Connaughton Decl. ¶¶ 10, 23, 24, 60-63.  Defendants note that they did not attach the Wolf & Associates estimate to the first estimate because the former was not yet ready for submission and Connaughton believed that all that was required at that stage was to put Nationwide on notice that Defendants disputed its estimate.  Connaughton Decl. ¶¶ 60-63.  Defendants also note that the letters that Nationwide sent them after they submitted the first estimate did not state that the estimate was deficient or requested another estimate or additional documentation; instead, these letters stated only that Defendants need to submit more information if they wanted Nationwide to pay them additional money.  Connaughton Decl. ¶ 4 & Ex. B.

The Court concludes that a genuine issue of material fact exists as to whether the repairs identified in the second estimate are excessive in light of industry standards and as to whether Defendants' first estimate was fraudulent.  Once again, the resolution of these issues turns on the credibility of the individuals involved in the inspection of the property, as well as the documentation they produced.

/ / /

### 4. Withholding of Material Information

Nationwide contends that Defendants concealed material information from it because they failed to disclose the estimate that John of Wolf & Associates prepared for them in July 2011, before Johnson completed his estimate for Nationwide. Nationwide contends that Defendants were required under the policy to provide this estimate as support for the Proof of Loss ("the first estimate"), but they did not provide it to Nationwide until two years after it was prepared. Nationwide contends that this constituted a failure to cooperate in the adjustment of their claim as required by the policy.

Defendants contend that they were not required to produce the Wolf & Associates estimate because Defendants never retained Wolf & Associates to represent them in connection with their claim. Connaughton Decl. ¶¶ 8-10, 14. Defendants also argue that, in any event, the Wolf & Associates estimate was not completed until after Defendants were required to submit their Proof of Loss. Id.

The Court concludes that a genuine issue of material fact exists with respect to whether the Wolf & Associates estimate was material information that Defendants were required to submit or disclose in connection with their claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants allege that Nationwide breached the implied covenant of good faith and fair dealing when it failed to pay them the full amount of damages they claimed in the second estimate, and when it intentionally delayed and obstructed the appraisal process to avoid paying insurance benefits. ECF No. 19 ¶ 27. Defendants allege that, as a result of Nationwide's conduct, they lost the benefits they were owed under the policy, as well as the attorney's fees and costs they expended in an effort to enforce their rights under the policy. Id. ¶ 30.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. This principle is applicable to policies of insurance." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1158 (9th Cir. 2002) (citing Comunale v. Traders & General Ins. Co., 50 Cal. 2d 654 (1958)) (internal quotation marks omitted). "The responsibility of the insurer to act in good faith 'is not the requirement mandated by the terms of the policy itself' but is imposed by

law, breach of which sounds in tort notwithstanding that the denial of benefits may also constitute breach of the contract." Id. (citing Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566 (1973)). "In the context of an insurance policy, [t]he terms and conditions of the policy define the duties and performance to which the insured is entitled." Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (citation and internal quotation marks omitted).

Under California law, a breach of the implied covenant of good faith and fair dealing in the insurance context has two elements: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1151 (1990). The test for determining whether an insurer is liable for breach of the implied covenant turns on whether the insurer's alleged refusal or delay was unreasonable. See Chateau Chamberay Homeowners v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001). "[T]he precise nature and extent of the duty imposed by [the] implied promise will depend on the contractual purposes, and therefore if there is no potential for coverage under the policy, a claim for bad faith cannot be brought." Amadeo, 290 F.3d at 1158 (internal citation and quotation marks omitted).

Nationwide moves for summary judgment on this counterclaim on the ground that its denial of the claim was based on its determination that the policy became void when Defendants misrepresented and concealed material facts in connection with their claim. Nationwide contends that its decision to void the policy and to deny Defendants the benefits at issue was based on a reasonable interpretation of the policy and Defendants' conduct.

The Court concludes that Nationwide's motion for summary judgment as to this counterclaim must be DENIED, because the basis of the motion requires a finding that Defendants failed to cooperate with the adjustment of their claim or that they intentionally concealed or misrepresented information, which are not findings the Court can make on summary judgment. As discussed in the previous section, a genuine issue of material fact exists with respect to whether Defendants misrepresented or concealed material facts within the meaning of the policy, and accordingly, a genuine issue of material fact exists with respect to whether Nationwide's denial of coverage was reasonable.

/ / /

### C. Punitive Damages

Defendants allege that Nationwide acted with fraud, malice, or oppression when it breached the implied covenant of good faith and fair dealing by wrongfully denying them benefits under the policy and by intentionally delaying the adjustment process. ECF No. 19 ¶ 32.

A plaintiff may recover punitive damages in connection with non-contractual claims if he proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code. § 3294. An insured alleging that the insurer breached the implied covenant of good faith and fair dealing may seek punitive damages in connection with that claim. Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (Cal. 2000) ("The availability of tort remedies in the limited context of an insurer's breach of the covenant advances the social policy of safeguarding an insured in an inferior bargaining position who contracts for calamity protection, not commercial advantage.").

Nationwide moves for summary judgment on Defendants' prayer for punitive damages in connection with their counterclaim for breach of the implied covenant of good faith and fair dealing on the ground that Defendants cannot prove by clear and convincing evidence that Nationwide acted toward them with malice, oppression, or fraud under California Civil Code section 3294. Defendants contend that their denial of the benefits at issue was reasonable in light of their belief that Defendants intentionally concealed or misrepresented information relevant to their claim.

As discussed above, a genuine issue of material fact exists with respect to whether Nationwide's denial of the benefits at issue was reasonable and in good faith. As such, a genuine issue of material fact exists as to whether Nationwide's conduct was oppressive, fraudulent, or

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

15

malicious. Nationwide's motion with respect to Defendants' request for punitive damages is therefore DENIED.

## IV. CONCLUSION

Nationwide's motion for summary judgment is DENIED in all respects.

**IT IS SO ORDERED.**

Dated: April 8, 2014

_____
JON S. TIGAR
United States District Judge