UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>          v.<br><br>DONALD V. RYAN, et al.,<br><br>                    Defendants. | Case No.  12-cv-05000-JST<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| AND RELATED COUNTER-CLAIM. | |

        This is an insurance coverage dispute relating to Donald, Barbara, and Michael Ryan's ("Ryan Defendants") insurance claim for vandalism to their commercial property.  The Ryans' insurer, plaintiff Nationwide Mutual Insurance Company, paid a portion of the claim, but then voided the policy on the ground of insurance fraud.  Nationwide filed this action seeking a declaratory judgment that its voidance of the Ryan Defendants' insurance policy was justified, and an order vacating a state court order compelling an appraisal of the Ryans' claim under the policy.

        As set forth below, the Court concludes that the Ryans intentionally overstated their insurance claim to Nationwide, that their overstated claim constituted a material misrepresentation, and that Nationwide was justified in voiding the Ryans' policy.  Accordingly, judgment will enter in Nationwide's favor.

I.      BACKGROUND

        A.      The Parties and Claims

        Nationwide Mutual Insurance ("Nationwide") issued an insurance policy ("the policy") of commercial property insurance to Defendants Donald V. Ryan, Barbara Ryan, and Michael Ryan

United States District Court<br>Northern District of California

("the Ryans"), which was effective from April 24, 2011, to April 24, 2012.  The policy provided first-party property coverage for a commercial building located at 7031 Watt Avenue in North Highlands, California ("the property").  Am. Compl., ECF Nos. 5, 33.  In June 2011, Defendants submitted a claim to Nationwide with respect to damage caused to the property by vandalism ("the claim").  ECF No. 5 ¶ 9.

Nationwide paid part of the claim ($99,277.52) before voiding the policy and denying the remainder of the claim ($541,264.89) on March 27, 2012, on the ground that Defendants committed insurance fraud.  Id. ¶ 18.

Nationwide filed this action on June 20, 2012, against the Ryans to obtain a declaratory relief under 28 U.S.C. §§ 2201 and 2202 that (1) Nationwide's voidance of the policy and denial of benefits was proper in light of the Ryans' intentional misrepresentation of material facts about the claim, and (2) that the state court's order requiring the appraisal of the claim must be vacated in light of the voided policy.  Am. Compl., ECF Nos. 5, 33.  The Ryans filed counterclaims against Nationwide for breach of contract and breach of the implied covenant of fair dealing based on Nationwide's failure to pay the totality of the claim.  ECF No. 19.

**B.      Procedural History**

The Court denied Nationwide's motion for summary judgment on the Ryans' counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing.

At the pretrial conference, the Court bifurcated the action, such that Nationwide's declaratory relief claims would be tried to the Court first, and if necessary, the Ryans' counterclaims would be tried to a jury at a later date.  The Court held a bench trial on April 28, April 29, and May 8, 2014, at which documentary and testimonial evidence was introduced.  The parties submitted proposed statements of decision to the Court, and closing arguments took place on June 17, 2014.  See ECF Nos. 115-118.

During the bench trial, Nationwide called Norman Johnson, its claims adjuster; and Matt Boling, a building contractor.  The Ryans called George John, a building construction estimator for Wolf Construction, Inc.; Michael Connaughton, a California licensed public adjuster for

2

Paladin Consulting, Inc.; Donald Ryan, co-owner of the loss location and a named insured and party to this litigation; Lee Trapani, a Senior Loss Control Specialist at Nationwide who inspected the premises for Nationwide shortly before the loss; and Jack Brier, the investigator from Nationwide's Special Investigations Unit who investigated the Ryans' vandalism claims for Nationwide.

The Court has jurisdiction over this action under 28 U.S.C. § 1332.

## II.      FINDINGS OF FACT[1]

### A.      The Policy

In addition to providing coverage, the policy contains the following provision ("the fraud and concealment provision"):

COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

A.     CONCEALMENT, MISREPRESENTATIONS OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you, or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.  This Coverage Part;

2.  The Covered Property;

3.  Your interest in the Covered Property; or

4.  A claim under this Coverage Part.

Ex. 1.

/ / /

---

[1] The parties presented more facts at trial than are discussed in this order.  The facts not discussed here were not relevant or material to the Court's determination of Nationwide's claims.

**B.      The Claim**

In June 2011, the Ryans submitted a claim to Nationwide arising from vandalism ("the vandalism at issue") to the property.  It was assigned claim number 72 04 PE 333832 06132011 51 by Nationwide ("the claim").  There is no dispute that the policy was in full force and effect at the time of the vandalism at issue.

The Ryans entered into a contract with Paladin Consulting so that Michael Connaughton of Paladin would represent them as a public adjuster in connection with the claim.  This contract provided, in relevant part:

> I have delegated full authority to Paladin Consulting to act on my behalf in regards to the above captioned claim.
>
> All communications, representations and writings, by or from Paladin Consulting to [Nationwide] will be deemed to be within the scope of the public adjuster's delegated authority, authorized by me and made on my behalf.

Ex. 2.

Connaughton and Donald Ryan testified at trial that the agreement was intended to and did authorize Connaughton to act for the Ryans in all dealings with Nationwide during its adjustment of the claim, and that all of his actions would be considered to be those of the Ryans.[2]

Nationwide's claims representative, Norm Johnson, contacted the Ryans and arranged with Connaughton to visit the property on June 24, 2011, at which time Johnson inspected the site, took photographs, and began an investigation of the loss and necessary repairs.

Each party hired an outside contractor to assist in preparing a scope and estimate of the

---

[2] Nationwide argues that Connaughton was the Ryans' agent for purposes of the Ryans' communications with Nationwide, and that his actions are imputable to them.  The Ryans do not dispute this argument, and the Court has accepted it for purposes of this Order.  See 13 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, Couch on Ins. § 197:36 (3d. ed. looseleaf 2014) ("As a general rule, a principal is chargeable with the fraud of his or her agent while acting in his or her behalf . . . .  Accordingly, the insured will be chargeable with any fraudulent acts of the public adjusters or others to whom the task of compiling of the proofs is delegated and recovery will be barred, even though the insured's agent, who was authorized to make the proofs, intentionally prepared the false proofs and inventories without the knowledge of the insured.").

United States District Court
Northern District of California

1  repairs that would be needed at the property.  Johnson retained Matt Boling of Regional Builders,

2  Inc. ("RBI"), and Connaughton retained George John, a partner in Wolf Construction, Inc.

3       Boling went to the property on or about July 1, 2011 and prepared a scope of repairs and

4  estimate of the cost to repair.  This estimate totaled $127,881.73 and was provided to

5  Connaughton, along with a check for the actual cash value amount of the estimate, on August 4,

6  2011.  Ex. 4, 5.

7       John and his partner, Jim Wolf, went to the property to prepare a scope of the necessary

8  repairs for Paladin Consulting's use in analyzing and preparing the claim.  Unbeknownst to

9  Nationwide, on July 9, 2011, John prepared a detailed estimate ("the Wolf Estimate") that

10  provided detailed descriptions and estimates of various items John believed needed repair, the cost

11  of which totaled $559,641.19.[3]  Connaughton did not disclose to Nationwide the Wolf estimate or

12  the photographs that John took of the damage at the property until after Nationwide filed this

13  action and the parties exchanged discovery.

14       On July 14, 2011, Johnson wrote to Connaughton to request that the Ryans submit a Sworn

15  Statement in Proof of Loss within 60 days.  Ex. 3.

16       On September 7, 2011, Connaughton sent Nationwide a Sworn Statement in Proof of Loss,

17  which was signed and notarized by Donald Ryan and provided that the replacement cost value of

18  the loss was $559,641.19.  Ex. 6.  Attached to the Proof of Loss was a one-page document listing

19  the categories of repair work and the costs associated with each category as estimated by the

20  Ryans as of that date.[4]  Id.  This one-page document was printed on "Paladin Consulting, Inc."

21  letterhead.  The Ryans did not submit a more detailed estimate or any photographs or other

22  information showing the pre-vandalism condition of the property, the damage caused by the

23  vandalism, or otherwise supporting the dollar amount asserted in the Proof of Loss, although they

24  were in possession of the Wolf estimate.[5]  Connaughton also notified Nationwide in the same

25

26  [3] As will be discussed below, the Wolf estimate itself was not admitted into evidence.

27  [4] The amount of detail in this summary was minimal.  For example, these are some of the
categories and corresponding amounts included in the summary: "cabinetry $256.24; cleaning,
$24,501.20; content manipulation $48.60; general demolition $22,880.72."  Ex. 6 at 2000162.

28  [5] See note 2, supra.

letter that the Ryans disagreed with Nationwide's estimate and that they would invoke the policy's appraisal provision to resolve any disagreements as to the value of the claim. Ex. 6.

On September 11, 2011, Johnson wrote to the Ryans and told them that they could obtain additional estimates and asked that they contact Nationwide if their contractor's estimate was higher than Nationwide's. Ex. 8. On September 13, 2011, Johnson again wrote to Connaughton acknowledging the Ryans' request for appraisal and advising Connaughton of Nationwide's selection of an appraiser in accordance with the procedure set forth in the policy. Ex. 9. On November 17, 2011, Johnson again wrote to Connaughton and explained:

> To date we have not received any information indicating that anymore should be paid on this claim. The amount claimed in Mr. Connaughton's correspondence dated September 7, 2011 provides no substantive information that would allow [Nationwide] to determine that those figures were based on like, kind, and quality repairs for damages suffered in the above referenced incident.
>
> In order to determine that your estimate matches our estimate in scope of repairs **we will need an estimate from you with the scope detailed line by line such as that which we provided.** Until such information is provided, [Nationwide] has only the estimate it developed by which to determine the cost of repairs, and thus no additional policy benefits can be forthcoming.

Ex. 11 (emphasis added). Neither Connaughton nor the Ryans responded to that letter, so on December 19, 2011, Johnson wrote again and stated exactly what he had written in his November 17 letter, namely that absent a detailed scope of repairs from the Ryans, Nationwide had no basis to pay additional policy benefits. Ex. 12. Again, neither Connaughton nor the Ryans responded. On January 31, 2012, and February 27, 2012, Johnson sent two more letters to Connaughton that were identical to the December 19, 2011, letter. Ex. 13, 14.

On February 27, 2012, counsel for the parties, the parties' designated party appraisers, and the umpire engaged in a telephone conference to discuss various issues in advance of the appraisal, which at that time was scheduled for March 28 and 29, 2012. The umpire ordered the parties to exchange the documents that they anticipated introducing into evidence at the appraisal hearing no later than March 13, 2012. On that date, Connaughton provided Nationwide with an estimated scope and cost of repairs, dated March 12, 2012, in the amount of $541,264.89 RCV, with

United States District Court
Northern District of California

6

1    recoverable depreciation of $26,805.20, and an ACV of $514,549.69.  The photos taken by John

2    were attached to the estimate.  Ex. 20, 21.

3           Upon receiving the Ryans' estimate, Nationwide representatives met with RBI

4    representatives to attempt to determine why the Ryan's estimate was more than four times greater

5    than Nationwide's.  Nationwide determined that many of the items identified in the estimate

6    submitted by Connaughton were: (1) not damaged in the vandalism; (2) listed in greater amounts

7    or sizes than were needed to repair the damage allegedly caused by the vandalism; (3) of a

8    superior quality than that which existed at the time of the vandalism; or (4) listed multiple times.

9    Nationwide then denied the balance of the Ryans' claim on the ground that the Connaughton

10   estimate contained substantial material misrepresentations designed to induce the payment of

11   insurance policy benefits that were not due.  On March 27, 2012, Nationwide issued its formal

12   denial letter to the Ryans.

13          On the Ryans' motion, the state court ordered appraisal.  The parties proceeded to appraisal

14   and the panel issued an award in favor of the Ryans of approximately $520,000.

15          Lee Trapani, Nationwide's Senior Loss Control Specialist, inspected the property for

16   Nationwide on February 17, 2011, for the purpose of determining whether the property was

17   suitable for insurance, i.e. whether the property had hazards that could result in a loss or an

18   accident.  Johnson did not take Trapani's inspection results into account in making his

19   determinations with respect to the claim.

20          Between June 2011 and January 2012, there were additional occurrences of vandalism at

21   the property, and the Ryans submitted three additional, unrelated claims to Nationwide.  Johnson

22   was the adjuster assigned to handle each claim.

23   **III.    CONCLUSIONS OF LAW**

24          The Court concludes that Nationwide has met its burden to show that its voidance of the

25   policy and its denial of the remainder of the Ryans' claim were justified, based on the Ryans'

26   intentional misrepresentations in connection with the claim.  This conclusion entitles Nationwide

27   to judgment on its first claim for declaratory relief to the extent it is premised on the theory of

28   intentional misrepresentation.  Because Nationwide is entitled to judgment on that claim, it also is

United States District Court
Northern District of California

7

1   entitled to judgment on the Ryans' counterclaims, which are predicated on the argument that

2   Nationwide's voidance of the policy and denial of benefits were unjustified.

3          The Court also concludes that Nationwide did not meet its burden to show that it was

4   justified in voiding the policy based on the Ryans' purported concealment of the Wolf estimate,

5   which was its second, alternate theory supporting its first claim for declaratory relief.[6]

6          Finally, the Court concludes that Nationwide's second claim for declaratory relief, which

7   sought to vacate an order by the state court compelling appraisal, is moot in light of the state

8   court's appraisal proceedings and the subsequent entry of an appraisal award.

9          **A.     Intentional Misrepresentations**

10                 **1.     Legal Standard**[7]

11          In California, "[a] fraud and concealment clause in an insurance policy generally voids the

12   policy upon the insured's attempts to deceive the insurer." Leasure v. MSI Ins. Co., 65 Cal. App.

13   4th 244, 248 (1998) (internal citations omitted). "[I]n order to void a policy based upon the

14   insured's violation of the standard fraud and concealment clause (and/or Ins. Code, § 556), the

15   false statement must have been knowingly and willfully made with the intent (express or implied)

16   of deceiving the insurer." Cummings v. Fire Ins. Exch., 202 Cal. App. 3d 1407, 1415 n. 7 (Cal.

17   Ct. App. 1988). "The validity of an insurance contract, however, is not affected by concealment

18   or misrepresentations that do not relate to material matters." Leasure, 65 Cal. App. 4th at 248

19   (internal citations omitted).

20   _____

21   [6] As discussed above, the Court has granted Nationwide's motion to amend the complaint to reflect the evidence of concealment that it presented during the bench trial.

22   [7] The Ryans contend in their proposed statement of decision that reliance is an element that Nationwide must establish in order to prevail on this claim. See Proposed Statement at 24-25.

23   The authorities upon which the Ryans rely, however, address the standards for proving fraud outside of the insurance context. These authorities are inapposite. In California, when an insurer

24   seeks to void a policy on the grounds of fraud by the insured during the claims process, the insurer need not prove reliance. The question is not whether the insurer actually relied on the

25   misrepresentation, but whether a reasonable insurer would think the representation was important. See Cummings v. Fire Ins. Exch., 202 Cal. App. 3d 1407, 1417 (1988) ("[A] statement is not

26   material only if it relates to a matter which ultimately proves to be significant in the ultimate

27   disposition of the claim. Rather, if the misrepresentation concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact

28   misrepresented, then it is material." (emphasis omitted)).

1    A false representation is material if it relates to the insurer's "investigation to determine its

2    obligations under the policy." Id. (citation omitted); see also Cummings, 202 Cal. App. 3d at

3    1416-17 ("[T]he materiality of a statement is not defined and determined by the effect it has on the

4    outcome of the investigation. Rather, a question and answer are material when they relate to the

5    insured's duty to give to the insurer all the information he has as well as other sources of

6    information so that the insurer can make a determination of its obligations.  Thus, materiality is

7    determined by its prospective reasonable relevance to the insurer's inquiry.").  In other words, "if

8    the misrepresentation concerns a subject reasonably relevant to the insured's investigation, and if a

9    reasonable insurer would attach importance to the fact misrepresented, then it is material."

10   Cummings, 202 Cal. App. 3d at 1417.  The materiality of the statement must be determined by the

11   objective standard of its effect upon a reasonable insurer.  Id. at 1415 n. 7.

**2.    Analysis**

13   Under the terms of the policy, Nationwide had the authority to void the policy if it

14   discovered that the Ryans at any time "intentionally conceal[ed] or misrepresent[ed] a material

15   fact concerning" the covered property or a claim under the policy. Ex. 1 (emphasis added).  After

16   carefully examining the evidence presented by the parties at trial, the Court concludes that the

17   Ryans intentionally misrepresented several material facts concerning the loss to the property and

18   their claim to Nationwide, each of which constitutes an independent and proper basis for voiding

19   the policy in light of the policy's fraud and concealment provision.  Specifically, the Ryans

20   claimed damages that either did not exist or that were not caused by the vandalism event.

21   Contrary to the Ryans' contentions, these representations were not the result of mere differences in

22   opinion or inadvertent errors; they were knowing misrepresentations intended to deceive

23   Nationwide as to the scope and value of the Ryans' loss in order to increase their recovery from

24   Nationwide.  These intentional misrepresentations were material because they were directly

25   relevant to Nationwide's investigation of the claim.

26   In addition to the testimony of Johnson and Boling, the Court found Exhibit 20 to be

27   particularly instructive, which was introduced into evidence by Nationwide and included

28   photographs and parts of repair estimates organized by room or repair category.

9

United States District Court
Northern District of California

The Ryans introduced evidence at the bench trial, including the testimony of John, Connaughton, Donald Ryan, as well as several documents, but the Court found this evidence to be not credible or not tending to support the Ryans' position that any differences between their estimate and Nationwide's estimate was the result of a difference of opinion as to the scope and value of the loss.

The Court assigned significant weight to the undisputed fact that the Ryans were represented by Connaughton, an experienced adjuster, during all relevant time periods.

The Court also assigned significant weight to the fact that Donald Ryan's testimony as to the damage he observed at the property prior to Johnson's initial visit to the property was completely uncorroborated by photographs or the testimony of other witnesses. Ryan testified that he saw significant damage at the property immediately after the vandalism, including fecal matter on the floors, water from broken pipes, tears on the roof, glass everywhere, destroyed carpeting and electric panels, broken toilets, and chipped tile. Ryan also testified that he hired a crew of men to clean up the property from June 13 to June 24, before Johnson conducted his inspection, and that he spent $12,000 on this crew. The Court did not find this testimony to be credible because:

1.      The Ryans produced no evidence of any of the claimed costs associated with the alleged clean-up of all of this damage in the form of cancelled checks, bank statements, bank withdrawal receipts, paystubs, pay receipts, invoices for work performed, or invoices or proof of payment to any of the workers.

2.      The Ryans produced no photographs depicting the claimed damage as it existed prior to this purported clean-up work being performed.

3.      The Ryans made no claim for this alleged cost to Nationwide even though they would have been entitled to recover for it and they were being assisted by a Connaughton, who testified that he was aware of the clean-up crew.

4.      The claimed work performed and costs claimed associated with that work was not identified in the Ryans' estimate of March 2012.

5.      No witnesses, other than Ryan, testified as to the work allegedly performed by this

United States District Court
Northern District of California

crew.  None of the crew who allegedly assisted Ryan testified at trial to support his claim.

6.      Ryan's testimony that he lost the camera he claimed to have used to photograph the initial damage was not credible.

The following are specific items that the Court finds were intentionally overstated or misrepresented by the Ryans in their estimate in an effort to improperly inflate the scope of the loss and the value of their claim.

### a.      Flooring

Nationwide presented testimonial and photographic evidence showing that the Ryans' claim for repairs to the floors in the property in the amount of $46,649.69 was intentionally overstated and was material.

The Ryans introduced the testimony of John, Connaughton, and Donald Ryan, who described general damage to the floors throughout the building.  The Court did not find this testimony to be persuasive or credible because none of the photographs admitted into evidence depicted the claimed damage or otherwise supported this testimony.  The absence of photographs corroborating this testimony was notable, particularly in light of the following:

1.      Connaughton admitted that he had a duty to locate, identify, and document all damage;

2.      Connaughton testified that he relied on John to photograph the damage;

3.      John admitted that Connaughton had asked him to take pictures of the damage; and

4.      Connaughton testified that John took photographs of the damage.

The Ryans also introduced the testimony of John, who described specific damage in two areas: gouges and black marks on the entry floor and chipped tiles in the gym hallway.  The Court did not find this testimony to be persuasive or credible, because the Ryans introduced no supporting documentary or photographic evidence, and the Court was unable to locate any of the damage identified by John during his testimony in the photographs of the entry area that were admitted into evidence.  Though a photograph showing some chipped tiles in the gym hallway was introduced into evidence, the Court found credible and persuasive the testimony of Johnson and Boling that the damage depicted in that photograph appeared to pre-exist the vandalism at issue.

United States District Court
Northern District of California

1    In light of the foregoing, the Court concludes that the Ryans' intentionally misrepresented

2    the scope of the damage to the flooring, and was material.

3                        **b.      Demolition**

4    Nationwide presented evidence showing that the Ryans' claim pertaining to the demolition

5    category was intentionally overstated.  Specifically, Johnson and Boling testified that the inclusion

6    of a general demolition category in the Ryans' repair estimate was duplicative, as the demolition

7    for all items had already been accounted for in the specific line item for each.  Also, Nationwide

8    introduced evidence showing that the line item entries for the removal of mortar beds was

9    unnecessary, because (1) the tile floors were not damaged and therefore their removal was

10   unnecessary; and (2) even if the floors had been damaged and required removal, there were no

11   mortar beds under the tile floors in the building at the time of the loss.

12   In response, the Ryans offered the testimony of John, who testified that the Xactimate[8]

13   program does not accurately fund for the removal of debris in a large building, like the one at issue

14   in this case, and that as a result, he included 160 man hours in his estimate to properly account for

15   the removal of debris.  While there may be instances in which Xactimate does not accurately

16   capture the costs of renovation or repair, John's testimony as to this item was not credible.  The

17   Court accepts Johnson and Boling's testimony that the Xactimate program provided adequately

18   for this cost, and that the hours included in the Ryans' estimate were duplicative and excessive.

19   In light of the foregoing, the Court concludes that the Ryans intentionally misrepresented

20   the actual cost of demolition, and that this representation was material.

21                        **c.      Rear elevation**

22   Nationwide introduced persuasive testimonial and photographic evidence to show that,

23   contrary to the Ryans' estimate, the vandalism at issue did not include damage in the form of

24   graffiti to the rear elevation.  Johnson testified that there was no graffiti on the rear elevation when

25   he visited the property for the first time on June 24, 2011.  Johnson based this assertion on his

26

27   [8] Xactimate is commonly-used software for estimating the cost of repairs and reconstruction for
     residential and commercial structures.  Nationwide relied on an Xactimate estimate in determining
28   the appropriate payment on the Ryans' insurance claim.

United States District Court
Northern District of California

1    comparison of pictures he took on that date with the pictures taken by John at a later date, which

2    do reflect some graffiti in the same location on the walls.

3         The Ryans introduced no credible evidence to refute this testimony.  The only evidence

4    they offered was the testimony of Donald Ryan, who said that he saw the graffiti on the rear

5    elevation after the vandalism at issue.  As previously noted, Ryan had no photographs to support

6    his testimony, and he offered no explanation for Nationwide's photographs of the rear elevation,

7    which did not depict any of the graffiti damage that Ryan claimed he saw after the vandalism at

8    issue.

9         The Court therefore concludes that the Ryans intentionally claimed damage to the rear

10   elevation that was not caused by the vandalism at issue, and that this representation was material.[9]

                                    **d.      Sauna**

12        Nationwide introduced persuasive testimonial and photographic evidence showing that

13   there was no damage to the sauna caused by the vandalism that was the basis of the claim.

14   Johnson and Boling both testified that the two photographs depicting markings carved into two of

15   the boards in the sauna pre-dated the vandalism at issue because they appeared to be old, faded,

16   and inconsistent with the other vandalism damage observed at the property.  Moreover, even

17   assuming that these carvings had been caused by the vandalism at issue, Nationwide offered

18   compelling evidence that the reasonable repair would have been to sand those two boards or to

19   remove and replace only the damaged boards, and not to completely remove and replace the entire

20   sauna, as the Ryans' claim demanded.

21        The Ryans introduced no credible evidence to show that the sauna was damaged by the

22   vandalism at issue.  Neither the testimony of Donald Ryan, nor the photographs of the sauna taken

23   by John, refuted the fact that the carvings appeared to be old, or that a reasonable repair would

24   have been limited to the replacement of the damaged boards.

25        Accordingly, the Court concludes that Ryans' claim that the entire sauna needed to be

26   replaced as a result of the vandalism constituted an intentional misrepresentation, and that this

27   _____

28   [9] The graffiti may have been caused by vandalism that took place after the vandalism that gave
     rise to the claim at issue in this action.

United States District Court
Northern District of California

1   representation was material.

2                           e.      Pool

3          Nationwide introduced testimonial and photographic evidence establishing that the

4   vandalism in question caused minimal damage to the pool room, and that its estimate in the

5   amount of $1,142.24 (RCV) properly reflected this minimal damage.  This evidence also showed

6   that the Ryans' claim for the cost to repair this room in the amount of $69,241.94 (RCV)

7   intentionally overstated the amount of the loss and constituted an intentional material

8   misrepresentation.

9          White spots on the spa

10         The Ryans argued at trial that the white spots on the spa were the result of a vandal spilling

11  white paint in several areas.  Nationwide maintained that the white spots were patches of defects

12  or damage that existed before the loss.

13         The Court concludes that the spots depicted in the photographs offered at trial, Ex. 20, GJ

14  1169 and GJ 1170, were not caused by vandalism.  Additionally, the Court finds that John's

15  testimony was not credible for the following reasons: (1) John essentially admitted that the white

16  spots were inconsistent with all other damage in the building; (2) all other paint vandalism was

17  sprayed on in red or applied in elaborate graffiti in black; (3) the Court saw no evidence in any

18  photograph of the "splatter" that John claimed supported his view that white paint that had been

19  dropped from a can onto the spa from above; and (4) had the vandals caused this damage as

20  claimed by John, the Court would expect to see evidence of the paint dripping down the walls of

21  the spa.

22         As such, the Ryans' claim for repairs related to these spots constituted an intentional

23  misrepresentation, and that this representation was material.

24         Pool Deck

25         All of the photographs of this room showed that the deck was poorly maintained, well-

26  worn, and devoid of any obvious evidence of vandalism.

27         The Ryans claimed that the entire pool deck had to be soda blasted and re-sealed at a total

28  cost of $8,366.25 (RCV) and offered John's testimony to support this claim.  The Court did not

1    find John's testimony on this point to be credible given the absence of any clear photographic

2    evidence to corroborate it.

3         As such, the Court concludes that the Ryans' claim in the amount of $8,366.25 (RCV) to

4    soda blast the pool deck and apply a new finish was intentionally false and could not reasonably

5    have been the result of error.  Thus, the claim for this amount constituted an intentional material

6    misrepresentation, and that this representation was material.

7         <u>Pool Equipment</u>

8         Nationwide's estimate included the replacement of the admittedly damaged or destroyed

9    pool equipment, in the amount of $6,582.55 (RCV).  The Ryans claimed a total of $38,154.96 for

10   the damage to this equipment, and claimed that Nationwide's estimate improperly omitted many

11   of the damaged items.

12        The Ryans offered the testimony of John and several photographs to support their position.

13   In reviewing the photographs depicting this area of damage, the Court was unable to verify John's

14   claims of damage.  For example, he claimed there were three pool filters, as opposed to the two

15   listed in Nationwide's estimate, but none of the photographs to which he referred depicted this

16   third purported filter.  The item that John pointed to in the pictures did not appear to be a filter at

17   all, as it was different in shape and color from the other two.

18        Accordingly, the Court concludes that the Ryans' claim for claimed damaged pool

19   equipment in excess of Nationwide's estimate was intentionally false and constituted an

20   intentional material misrepresentation that justified Nationwide's voidance of the policy.

21                        **f.    Basketball/boxing room**

22        Nationwide introduced persuasive testimonial and photographic evidence showing that the

23   vandalism at issue caused minimal damage to this room.  After reviewing the photographic

24   evidence presented in connection with these rooms, the Court finds that any damage present on the

25   walls appears to be the result of wear-and-tear or poor maintenance.  <u>See</u> Ex. 20 at 2002374 to

26   2469 & GJ1349 to 1353.   As such, the Ryans' intentionally overstated the loss to this room, and

27   that this representation was material.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### g.      Weight room

Nationwide introduced testimonial and photographic evidence showing that there was some damage to this room caused during this vandalism event, but that the Ryans overstated their claim for the cost to repair this room.

The Ryans introduced the testimony of John and Donald Ryan to support the theory that more mirrors were broken by the vandalism at issue than Nationwide recognized in its estimate. Ryan explained the complete absence of any broken glass in any of the photographs introduced at trial by claiming that he hired a work crew that worked from June 13 to June 24, before Nationwide inspected the loss, and that the crew cleaned up and disposed of all the debris.  When asked if he took photographs of all this purported damage before it was cleaned up, Ryan testified that he did, but that his camera was lost.  The Court did not find Ryan's testimony to be credible because it is not supported by any of the evidence on the record, and because Ryan had not previously disclosed the existence of the lost camera to Nationwide.  Ryan also failed to introduce into evidence any receipts or any other evidence to corroborate his hiring of a clean-up crew.

The Ryans' damages claim as to this room was also implausible.  The damage depicted in the photographs of this room showed several missing mirror wall panels, with a modicum of spray paint extending in a line across both mirror panels and blank wall surfaces.  The Ryans' theory of damage required that vandals have first removed several mirror panels, then walked across shards of broken mirror[10] to haphazardly apply spray paint to the wall surface.   The Court finds this scenario implausible at best.

Accordingly, the Court concludes that the Ryans' intentionally overstated the damage to this room, and that this representation was material.

### h.      Crane rental

Nationwide introduced evidence, primarily through the testimony of Boling, to show that the amount of time that the Ryans claimed was necessary for the crane rental was grossly

---

[10] There is an alternative scenario in which the vandals could have removed the mirror panels so carefully that they did not break, and so there would be no shards of glass on the ground; but this is even less plausible.

1    excessive.  Boling testified that it would take about an hour to remove the seven damaged HVAC

2    units from the roof, and another hour would be needed to lift onto the roof the seven replacement

3    units.  Because most rental companies impose a four-hour minimum charge, that is the amount he

4    estimated was reasonable.

5            The Ryans introduced evidence in the form of John's testimony to show that the Ryan's

6    claim for 40-hours of crane rental time, which totaled $10,866.00, was necessary.  The Court did

7    not find John's testimony to be credible because: (1) he was unable to reconcile the differences

8    between his deposition testimony and his trial testimony as to the number of hours required for the

9    crane rental; (2) the admitted amount of work to be performed by the crane (i.e., removing seven

10   HVAC units and lifting seven replacement units) appeared to be relatively straightforward and not

11   time-consuming; (3) John testified that the crane needed to be present at the property at least for

12   one of the days of the rental to remove debris from the roof, but the photographs of the roof that

13   were introduced into evidence failed to depict any appreciable debris on the roof other than the

14   seven damaged HVAC units; and (4) John testified, without pointing to any corroborating

15   evidence from the rental company, that the crane had to be disassembled and returned to the rental

16   company at the end of each day, and then brought back to the site and reassembled each morning,

17   rather than remaining on site.

18           The Court therefore concludes that the Ryans intentionally overstated the amount of time

19   required for the crane rental, and that this representation was material.

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

**B.      Concealment**[11]

**1.      Legal Standard**

As a threshold matter, the Court notes that the authorities cited by Nationwide in its discussion of the legal standard for voiding an insurance policy on the ground of concealment are inapposite because they address circumstances involving concealment at the time of a policy application, as opposed to the making of a claim for benefits.  The Ryans also make references to the law pertaining to concealment at the time of an insurance application.

The case law distinguishes between concealment that takes place in the course of applying for insurance from concealment related to a claim for benefits after the insured has secured a policy.  Compare Fireman's Fund American Ins. Co. v. Escobedo, 80 Cal. App. 3d 610, 619 (1978) (holding that intentional or unintentional concealment in connection with an application for insurance is a proper ground for rescinding an insurance policy) (citing Cal. Ins. Code §§ 330 to 339), with Cummings v. Fire Ins. Exch., 202 Cal. App. 3d 1407, 1418 (Cal. Ct. App. 1988) (holding that fraud or concealment in the course of making a claim for insurance benefits are proper bases for voiding an insurance policy).   In the former case, the policy is rescinded; in the latter case, it is voided.  "The difference between rescinding a policy and voiding a policy is that rescission renders the policy void from the beginning, as if it never existed (ab initio), while

---

[11] As the Ryans correctly state in their proposed statement of decision, concealment is not alleged in the operative complaint.  Ryans' Proposed Statement of Decision, ECF No. 116, at 27-28.  At the conclusion of trial, however, Nationwide moved to amend to complaint under Rule 15(b) to conform to the evidence presented during the trial.  The fact that the motion to amend was made at the conclusion of the proceedings is not dispositive.  6 Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1488 (2010) ("Quite appropriately the courts have not imposed any arbitrary timing restrictions on requests for leave to amend and permission has been granted under Rule 15(a) at various stages of the litigation, [including] . . . at the close of trial").

Because Nationwide's allegation that the Ryans failed to disclose material facts was well-known to all parties and a core part of both pre-trial discovery and the parties' presentations at trial, see, e.g., id. at 27-30, the Court concludes that there would no prejudice to the Ryans from the granting of the motion.  See Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973) (trial court should have granted motion to amend made at trial where opposing party where there was no showing of prejudice to the opposing party).  Nationwide's motion to amend its complaint is granted.

United States District Court
Northern District of California

1   voiding the policy operates to nullify the policy from some date after its inception."  The Rutter

2   Group, Cal. Prac. Guide Ins. Lit. Ch. 5-F.

3        A review of the relevant case law reveals that the standard for voiding a policy for

4   concealment in connection with a claim for benefits is the same as that for voiding a policy

5   because of an intentional misrepresentation.  California courts refer to insurance policy provisions

6   such as the one at issue here as "fraud and concealment provisions"; when analyzing the

7   circumstances under which a policy can be voided under such provisions, these courts appear to

8   conflate the concepts of concealment and fraud.  See, e.g., Leasure v. MSI Ins. Co., 65 Cal. App.

9   4th 244, 248 (1998) ("A fraud and concealment clause in an insurance policy generally voids the

10  policy upon the insured's attempts to deceive the insurer."); Cummings v. Fire Ins. Exch., 202 Cal.

11  App. 3d 1407, 1415, 249 Cal. Rptr. 568, 572 (Cal. Ct. App. 1988) (alluding to the "fraud and

12  concealment provisions found in most property insurance policies") (internal quotation marks

13  omitted).  Indeed, these courts emphasize that the relevant findings for voiding a policy under such

14  provisions are that the insured "attempt[ed] to deceive the insurer" and that the deceit "relate[ed]

15  to material matters," which they define as those matters relevant to the insurer's investigation of a

16  claim.  Leasure, 65 Cal. App. 4th at 248 (citations omitted).

        **2.    Analysis**

18       Under its second theory for declaratory relief that its voidance of the policy was justified,

19  Nationwide contends that the Ryans concealed the Wolf estimate from it and that this concealment

20  constitutes yet another reason for voiding the policy.  This theory is based on the notion that

21  (1) John completed the Wolf estimate in early July 2011; (2) the Wolf estimate was "identical in

22  its form and content" to the Ryans' Proof of Loss; and (3) the Ryans failed to produce it to

23  Nationwide until after this litigation began even though Nationwide repeatedly asked for more

24  detailed information about the loss prior to filing this action.  See Nationwide Statement of

25  Decision at 30-31.

26       The Court concludes that Nationwide failed to present sufficient evidence at trial to

27  establish that the Wolf estimate was material to the claim or that the Ryans intentionally concealed

28  the estimate.  Because Nationwide never admitted the Wolf estimate into evidence, the Court

1    cannot verify Nationwide's contention that the Wolf estimate formed the basis of the attachment to

2    the Ryans' Proof of Loss.  See Bench Trial Exhibits List, ECF No. 118 at 4 (showing that the

3    Wolf estimate not admitted into evidence).

4         Accordingly, the Ryans are entitled to judgment on this theory.

5         **C.      State Court's Order Compelling Appraisal**

6         Nationwide's second claim for declaratory relief seeks to vacate the state court's order

7    compelling appraisal on the ground that the order is moot in light of Nationwide's voidance of the

8    policy.

9         Because the state court held the appraisal and issued an appraisal award in connection with

10   the claim after this action was filed, this claim for declaratory relief is moot.  The Court notes,

11   however, that the appraisal award entered by the state court will have no effect in light of this

12   Court's determination that Nationwide's voidance of the policy was proper on the ground that the

13   Ryans' made intentional misrepresentations in connection with the claim.  See Kirkwood v.

14   California State Automobile Assn. Inter-Ins. Bureau, 193 Cal.App.4th 49, 53 (2011) ("[T]he

15   appraisal panel's power is restricted to the factual task of valuing the items of property submitted

16   for appraisal.  Matters of statutory construction, contract interpretation and policy coverage are not

17   encompassed within the ambit of a section 2071 appraisal.").

18   **IV.    CONCLUSION**

19        For the foregoing reasons, Nationwide is entitled to judgment on its first claim for

20   declaratory judgment to the extent it was premised on the theory of intentional misrepresentation.

21   Nationwide also is entitled to judgment on the Ryans' counterclaims.

22        The Ryans are entitled to judgment on Nationwide's first claim for declaratory relief to the

23   extent it was premised on the theory of concealment.

24        Nationwide's second claim for declaratory relief is moot.

25        As this order resolves all claims and counterclaims in this action, the Court will not

26   conduct a second-phase jury trial.  Nationwide shall submit a proposed judgment to the Court

27   within five court days of the date this order is filed.  ; the Ryans shall submit any objection – to the

28   / / /

United States District Court
Northern District of California

form of judgment only – within five court days thereafter; and Nationwide shall file its response to those objections, if any, within five court days.

**IT IS SO ORDERED.**

Dated:  September 25, 2014



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California